RALEIGH SMOKELESS FUEL CO., PETITIONER, v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 7767. Promulgated March 2, 1927.

1. A liability incurred through a breach of contract is a deduct-
ible loss for the year in which the breach occurred, where liability
was admitted, an offer in compromise was made, and an amount
representing the estimated liability was accrued on the books,
though the amount of the loss was undetermined until compromise
settlement was effected during the succeeding year.

2. Debts owed by bankrupts were ascertained to be worthless
and charged off within the year to the extent that deductions
therefor were claimed.

*Moultrie Hitt, Esq.*, and *Clarence A. Miller, Esq.*, for the petitioner.
*A. R. Marrs, Esq.*, for the respondent.

This proceeding results from the determination by the respondent
of a deficiency in income and profits taxes for the fiscal year ended
June 30, 1921, in the amount of $18,022.38, of which approximately
$14,700 is in controversy. Four errors are assigned by the peti-
tioner: (1) The inclusion in income of the sum of $3,900 as "esti-
mated loss on 1,300 tons of coal due the Birch Fork Coal Company";
(2) the disallowance as a deduction from and the inclusion in net
income of $16,602.56, as a liability for damages incurred in the
regular course of business on account of the breach of a contract
occurring during the months of January, February, and March, 1921;
(3) the disallowance as a deduction from and the inclusion in net
income of the sum of $5,786.03, representing a liability to the Norfolk
& Western Railway Co. for demurrage incurred during the fiscal
year ended June 30, 1921; (4) the disallowance as a deduction from
and inclusion in income of bad debts, determined to be worthless
in part and charged off on the books, in the amount of $22,317.92.
At the hearing petitioner withdrew his third assignment of error.

FINDINGS OF FACT.

Petitioner is a corporation, incorporated August 18, 1919, under
the laws of the State of West Virginia, and is engaged in the general
coal brokerage business. The books of account of the petitioner,
during the fiscal year ended June 30, 1921, were kept on the accrual
basis, and its income and profits-tax return was filed upon that basis.
In carrying on its business of general coal brokers, it was necessary
for petitioner to make and enter into contracts with coal-mining
companies for the delivery to it of quantities of coal at agreed prices
and for fixed periods of time. It then secured purchasers for the

coal it was under contract to purchase. An extensive business was carried on during the fiscal year 1921, the gross business being approximately $3,500,000.

On or about April 1, 1920, the petitioner entered into a contract with the Birch Fork Coal Co., by the terms of which the latter agreed to sell and the petitioner agreed to buy the entire output or amount of coal mined by the seller from its mines during the period April 1, 1920, to March 31, 1921, at the fixed price of $4.40 per ton of 2,000 pounds, f. o. b. cars at seller's mine.

Upon execution of this contract, both parties entered upon the performance thereof.. During the latter part of 1920 and the first part of 1921, the coal market was in a very depressed state, and, due to the unexpected slump in the selling price of coal, the petitioner found itself unable to market the coal it was under contract to purchase, and, had it sold the coal, loss would have resulted. Finding itself in the position of being under contract to purchase coal it could not then market, the petitioner, in January, 1921, elected to and did breach the contract with the Birch Fork Coal Co. and defaulted in its obligation to take the coal called for by the contract. Immediately upon breach of the contract in January, 1921, the petitioner endeavored to effect a settlement and compromise its liability for damages. The petitioner admitted the liability pursuant to the breach of the contract, but was unable to agree with the Birch Fork Coal Co. as to the extent of the liability. The general counsel for the petitioner, and its officers and directors, endeavored to effect a settlement, and as a result a revision of the contract was made in January, 1921, by which petitioner was required to receive a lesser amount of coal than called for in the original contract. The revision of the contract was executed by an official of the Birch Fork Coal Co., whose authority to sign the contract was denied by his principal, rendering it ineffective and causing the parties to revert to the terms of the original contract of April 1, 1920. On March 31, 1921, the general counsel for the petitioner, upon proper authority, offered to pay the Birch Fork Coal Co. $10,000 in settlement of its liability by reason of the breach of the contract. When the petitioner closed its books for the fiscal year ended June 30, 1921, it estimated that it would be called upon to pay for 1,300 tons of coal under the revised contract of January, 1921, estimated the amount of damages as $3,900, set that sum up on its books as an accrued liability for the fiscal year, and claimed the same as a deduction from gross income. In November, 1921, the Birch Fork Coal Co. filed suit against the petitioner, claiming $77,000 on account of breach of contract. Petitioner interposed no defense and filed no answer. On December 8, 1921, petitioner

compromised and settled the suit by paying the Birch Fork Coal Co. $15,000 and crediting the seller's account in the sum of $1,602.56.

On March 1, 1921, Coale & Company, a customer of the petitioner, was indebted to the petitioner in the sum of $26,024.25. Repeated efforts were made to collect the account, but without success. Drafts were drawn on the debtor which were returned unpaid. Petitioner secured reports from R. G. Dun & Co. and the Bradstreet Company, which showed that the debtor was heavily involved. Petitioner then turned the account over to its attorneys for collection. On March 13, 1921, petitioner's attorneys received notice of a meeting of creditors of Coale & Company, to be held in New York City, on March 14, 1921. The meeting was attended by the attorney. Immediately thereafter, the debtor was placed in the hands of receivers appointed by a Federal District Court by virtue of involuntary bankruptcy proceedings. The officers of petitioner and its attorney made an exhaustive investigation of the assets and liabilities of the debtor in April, 1921, and found that the liabilities exceeded $1,000,000, while the assets were of doubtful value, consisting principally of an unliquidated claim against a company that was then in receivership. Officials of petitioner conferred with other creditors of the debtor and, as a result of such investigation, it was concluded, prior to June 30, 1921, that not over 25 per cent of the amount of the debt of Coale & Company could be collected. On June 3, 1921, the petitioner requested an opinion from its attorney as to the value of the account, and its attorney advised it that it was his opinion that not over 25 per cent of the debt could be collected. Before the closing of the books for the fiscal year 1921, petitioner charged off on its books 75 per cent of the account of Coale & Company, or $19,525.69.

The Central West Virginia Fuel Co., on January 1, 1921, was indebted to petitioner in the sum of $2,792.23. In February, 1921, the president of the debtor corporation died, and it was reported that there were defalcations of $35,000. The debtor was a small corporation. Petitioner placed the account in the hands of its attorney for collection, and in March, 1921, brought suit for collection of the account. Judgment was obtained, upon which execution was had, and a writ of attachment was sent to the sheriff of the proper county. The execution was returned by the sheriff marked "No property found." A second execution was issued, but prior to service of same the debtor was adjudged a bankrupt. Petitioner made and caused its attorney to make an investigation as to the assets of the debtor. The only assets found consisted of a possible claim against the estate of the deceased president of the debtor, which claim was for money said to have been taken out of the treasury of the company, and a few fixtures of no value. In May or the early part of June, 1921, attorneys for petitioner, having com-

pleted their investigation of the assets of the debtor, advised that there was· no possibility of collecting the account. The officers of petitioner, having also made an investigation with the same results, determined the account to be worthless prior to June 30, 1921, and charged .the account off the books in the amount of the debt, i. e., $2,792.23.

### OPINION.

MILLIKEN: Petitioner's claim for a deduction of the sum of $16,602.56 paid as a result of the liability resulting from the breach of the contract with the Birch Fork Coal Co., is clearly an allowable deduction for the fiscal year ended June 30, 1921. The case at bar comes squarely within our decision in the *Appeal of Producers Fuel Co.*, 1 B. T. A. 202.

We have made our findings of fact in great detail. The evidence in this appeal clearly shows that petitioner, after a most careful and painstaking· consideration of all the facts, the attendant and surrounding circumstances, ascertained the debt owed by Coale & Company to be worthless to the extent of 75 per cent thereof, and the debt owed by the Central West Virginia Fuel Co. to be entirely worthless. The ascertainment was made within the taxable year, and to the extent that these debts were ascertained to be worthless, they were charged off on the books of the petitioner. The respondent erred in his failure to allow the deductions.

*Judgment will be entered on 15 days' notice, under Rule 50.*